JMM:SCF
F.#2012R00849

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 25 2012 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

LOUIS ABATE,

   Defendant.

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 18, U.S.C., §§ 641
and 3551 et seq.)

MJ 12-0696

JENNIFER SCHOFIELD-LAKE, being duly sworn, deposes and says that she is a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General ("HUD OIG"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between May 2009 and August 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LOUIS ABATE did knowingly and intentionally steal, purloin and convert to his own use money and things of value of the United States and a department and agency thereof, to wit: approximately $122,250.00 in federally-funded low-income housing financial assistance issued by the United States Department of

Housing and Urban Development (known as the "Section 8 Program").

(Title 18, United States Code, Sections 641 and 3551 et seq.)

The source of your affiant's information and the grounds for her belief are as follows:[1]

I. **Introduction**

1. I am a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General ("HUD OIG") and have been so employed for approximately 12 years. Prior to working for HUD OIG, I spent 3 years as a Special Agent with the United States Department of State, Diplomatic Security Service. During my time as a Special Agent with HUD OIG, I have conducted various investigations of program fraud. In connection with those and other investigations, I have routinely conducted or participated in physical surveillance, the execution of search warrants, debriefings of informants and other individuals and the review of financial and other records. Through my training, education and experience, I have become familiar with the manner in which Section 8 and other program fraud is conducted, and the methods by which individuals obtain, conceal and secure the proceeds of such activity.

---

[1] Because this affidavit is intended only to set forth sufficient facts to establish probable cause to arrest the defendant, I have not described all of the relevant facts and circumstances of which I am aware concerning this investigation.

2. The facts set forth in this affidavit are based upon an investigation conducted by HUD OIG, including interviews with witnesses and the review of documents and public records. Where actions, conversations and statements of others are related in this Affidavit, they are related in substance and in part unless otherwise indicated.

## II. The Section 8 Program

3. Qualifying low-income tenants receive Section 8 Program benefits under a federal program that is funded by the United States Department of Housing and Urban Development ("HUD") pursuant to several statutes and regulations, including Title 42, United States Code, Sections 1437f and 12701 et seq. and 24 C.F.R. §§ 5.100 et seq. The Section 8 Program provides rent subsidies to low-income families. To be eligible for Section 8 Program benefits, qualified recipients are required to satisfy certain criteria, including establishing that they are United States citizens or that they legally reside in the United States, and that they fall within certain low-income guidelines and categories. Qualified recipients of these benefits must not own substantial assets, such as real estate, that would place them above the low-income guidelines and categories. A tenant who receives Section 8 Program benefits must reside in the housing associated with his or her acceptance into the program. Applicants seeking Section 8 Program benefits are required to

complete an application setting forth their eligibility for benefits. If accepted into the Section 8 Program, participants are also required to undergo a re-certification process each year through which they must establish their continued eligibility. Both the initial application and the re-certification documentation are required to be maintained by the administrative agency overseeing the issuance of the Section 8 Program funds.

4.  The Nassau County Office of Housing and Community Development ("NCOHCD") is the administrative entity responsible for implementing and monitoring the programs and grants funded by HUD in Nassau County, including Section 8 grants.[2] The purpose of NCOHCD is to aid underserved Nassau communities by providing decent housing, a suitable living environment and expanding economic opportunities for low and moderate income families.

5.  Generally, between May 2009 and August 2011, NCOHCD administered the Section 8 Program in Nassau County. In the normal course, an applicant residing within Nassau County can

---

[2] NCOHCD is also responsible for implementing and monitoring grants initiated and dispersed by the New York State Division of Housing and Community Renewal ("DHCR"). DHCR is responsible for the supervision, maintenance, and development of affordable low-and moderate-income housing in New York State. DHCR performs a number of activities in fulfillment of this mission, including oversight and regulation of the State's public and publically assisted rental housing; administration of the State's rent regulations and protection of rent regulated tenants; and administration of housing development and community preservation programs, including State and Federal grants and loans to housing developers to finance construction and renovation of affordable housing.

apply with NCOHCD for Section 8 Program assistance, after establishing his or her low-income status and United States citizenship or legal residency, among other requirements. Once the application is completed and received by NCOHCD, the applicant is placed on a waiting list. If the applicant is accepted for assistance, NCOHCD, using Section 8 HUD funds or DHCR funds, provides rent assistance through payments of up to 70% of the recipient's income and are made directly to the recipient's landlord, with the balance of the rent to be paid by the recipient/tenant. While some townships in Nassau County operate their own Housing Authorities, which also provide public rent assistance to low-income citizens, NCOHCD is solely responsible for administering Section 8 Program funding to participants who reside in the Village of Island Park. In order to accomplish this NCOHCD created and oversaw the operations of the "Island Park Housing Authority."

6. Between May 2009 and August 2011 HUD directly funded the Island Park Housing Authority Section 8 Program with federal money. Former NCOHCD officials, including the defendant LOUIS ABATE, were tasked with overseeing the day-to-day operation of the Island Park Housing Authority's Section 8 Program, which included the taking and accepting of Section 8 tenant and landlord applications, the processing of those applications, and

apply with NCOHCD for Section 8 Program assistance, after establishing his or her low-income status and United States citizenship or legal residency, among other requirements. Once the application is completed and received by NCOHCD, the applicant is placed on a waiting list. If the applicant is accepted for assistance, NCOHCD, using Section 8 HUD funds or DHCR funds, provides rent assistance through payments of up to 70% of the recipient's income and are made directly to the recipient's landlord, with the balance of the rent to be paid by the recipient/tenant. While some townships in Nassau County operate their own Housing Authorities, which also provide public rent assistance to low-income citizens, NCOHCD is solely responsible for administering Section 8 Program funding to participants who reside in the Village of Island Park. In order to accomplish this NCOHCD created and oversaw the operations of the "Island Park Housing Authority."

6. Between May 2009 and August 2011 HUD directly funded the Island Park Housing Authority Section 8 Program with federal money. Former NCOHCD officials, including the defendant LOUIS ABATE, were tasked with overseeing the day-to-day operation of the Island Park Housing Authority's Section 8 Program, which included the taking and accepting of Section 8 tenant and landlord applications, the processing of those applications, and

the disbursing of the housing assistance payments to respective landlords.

7. In connection with the Island Park Housing Authority, and during the relevant period, NCOHCD officials established an account with Chase Bank in order to accept funds from HUD and to disburse those funds to the landlords of Section 8 Program participants in Island Park, Long Island. NCOHCD officials also established a system whereby Automatic Data Processing, Inc. ("ADP"), a payroll administration company, would automatically issue the Island Park Housing Authority Section 8 Program payments to landlords each month upon the telephonic confirmation of a NCOHCD official.

**III. The Investigation of NCOHCD and Defendant LOUIS ABATE**

8. Beginning in approximately 2004, and continuing until approximately 2012, defendant LOUIS ABATE served as a Program Coordinator, and as the Fiscal Manager for NCOHCD. In that role, ABATE was responsible for, among other tasks, overseeing the enrollment of participants in the Island Park Housing Authority Section 8 Program and the disbursement of Section 8 Program funds to the landlords of Program participants. In managing the disbursement of these funds during the relevant period, ABATE would, in the normal course, telephonically contact a representative from ADP each month and advise ADP of any changes in the monthly disbursements to the landlords of Island

Park Housing Authority Section 8 Program participants. ABATE's duties also included approving the ultimate release of the monthly Section 8 Program payments by ADP from Chase Bank.

9. Upon ABATE's confirmation, ADP issued checks each month, which were made payable to the landlords of each Island Park Housing Authority participant in the amount of each participant's Section 8 Program grant. These payments were issued in the form of paper checks payable to the respective landlords, and were received at NCOHCD's offices each month in a single mailing. After being received by NCOHCD, the checks were then mailed to the landlords.

10. During the course of the government's investigation of this matter, it was discovered that the list of landlords receiving funds in connection with the Island Park Housing Authority's Section 8 Program included an individual, "J.M. Watson," who received approximately $4,950 in rental subsidy each month. Such amount was more than three times the funds being received by any single other landlord in the Island Park Section 8 Program.

11. In order to investigate the abnormally large Section 8 Program payments being made each month to "J.M. Watson" on January 11, 2012, investigators questioned LOUIS ABATE concerning his role with the Island Park Housing Authority. In response to questioning that day, ABATE stated in sum and

substance that he was personally responsible for mailing each of the ADP issued checks to landlords receiving Section 8 Program payments for participants in the Island Park Housing Authority. However, ABATE denied maintaining any records, files or documents for the Island Park Housing Authority. In response to further questioning, ABATE denied knowing anyone by the name of J.M. Watson.

12. Further investigation revealed that between May 2009 and August 2011, the ADP checks issued each month to "J.M. Watson" were deposited into Capital One bank account. Bank records reveal that the owners of that account are defendant LOUIS ABATE and his wife Joanne M. Abate. Joanne Abate's maiden name is Watson. Neither LOUIS ABATE nor his wife are landlords to anyone receiving Section 8 Program funds in Nassau County.

13. After determining that ABATE was diverting Section 8 Program funds to his own personal bank account, investigators interviewed additional members of the NCOHCD. Those individuals advised that shortly after ABATE was interviewed in January 2012, he claimed that he was ill and essentially stopped coming to work. He was eventually terminated by NCOHCD because of excessive absences from his office. Subsequently, NCOHCD staff inventoried ABATE's office, including the contents of his desk. Among other items found in ABATE desk were the ADP payment summaries for the Island Park Housing Authority, which included

Section 8 Program payments to landlords. Notably, examination of these records showed that the page containing the record of payments to J.M. Watson each month was missing. Furthermore, official from NCOHCD indicated that upon their review of the Island Park Housing Authority's records they could find no documentation evidencing any tenant associated with the Section 8 Program payments being made to the landlord "J.M. Watson."

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant LOUIS ABATE and that the defendant be dealt with according to law.

Jennifer Schofield-Lake
Special Agent
U. S. Department of Housing and Urban Development, Office of Inspector General

Sworn to before me this
25th day of July, 2012

THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK